1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

SABELITA HAWKINS,

CASE NO. C16-0498JLR

11

                          Plaintiff,

              v.

ORDER ON MOTION TO
DISMISS OR FOR SUMMARY
JUDGMENT

12
13

UNITED STATES OF AMERICA,
et al.,

14

                          Defendants.

15
16

## I.    INTRODUCTION

17

Before the court is Defendant United States of America's ("the Government")[1]

18

motion to dismiss for lack of subject matter jurisdiction or for summary judgment. (Mot.

19
20
21
22

---

[1] "The United States is the only proper defendant in a[ Federal Tort Claims Act ("FTCA")] action. *See Lance v. United States*, 70 F.3d 1093, 1094 (9th Cir. 1995) ("The United States is the only proper defendant in an FTCA action."). For this reason, Ms. Hawkins's claim against Defendants Department of Veterans Affairs ("VA"), VA Puget Sound Health Care System, John Does 1-10, and Jane Does 1-10 is improper and the court dismisses those defendants with prejudice. (*See* Dkt.); *Lance*, 70 F.3d at 1094 (affirming dismissal of Doe defendants as improper parties). *Kennedy v. United States Postal Serv.*, 145 F.3d 1077, 1078

1  (Dkt. # 16).)  Plaintiff Sabelita Hawkins opposes the Government's motion.  (Resp. (Dkt.

2  # 17).)  The court has considered the Government's motion, the parties' submissions in

3  support of and in opposition to the motion, the relevant portions of the record, and the

4  applicable law.  Being fully advised,[2] the court GRANTS the Government's motion for

5  the reasons set forth below.

6  ## II.    BACKGROUND

7  This matter arises from a mental health breakdown that Ms. Hawkins suffered as a

8  result of workplace bullying.  (*See* Compl. (Dkt. # 1) ¶ 4.3-4.4; Claim (Dkt. # 1-1) at 4.)

9  Ms. Hawkins alleges that on October 22, 2011, she suffered a psychotic episode at work

10  resulting from a failed meeting to address workplace bullying.  (Compl. ¶¶ 4.4-4.5.)

11  After this psychotic episode, Ms. Hawkins was admitted to Swedish-Edmonds Hospital

12  for observation from October 22, 2011, to October 24, 2011.  (*Id.* ¶ 4.5; Longosky Decl.

13  (Dkt. # 21) at 1, Ex. D at 14 (stating a discharge date of October 24th).)  After her

14  release, Ms. Hawkins followed up with resident physician Daniel Doan on October 26,

15  2011, at the Veterans Hospital Women's Clinic.  (Compl. ¶ 4.6.)  Ms. Hawkins told Dr.

16  Doan that she was experiencing insomnia, anxiety, depression, and difficulty

17  concentrating that interfered with her daily activities.  (*Id.* ¶ 4.7; *see also* Claim at 4

18

19  _____

20  (9th Cir. 1998) (affirming the dismissal of FTCA claims against the United States Postal
Service); *Heine v. Vilsack*, No. 1:12-CV-01992-AWI-SMS, 2014 WL 7447619, at *2 (E.D. Cal.
Dec. 31, 2014) (dismissing the United States Department of Agriculture in an FTCA action

21  because it was "not the United States").

22  [2] Neither party requested oral argument, and the court concludes that oral argument
would not help its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1  (stating that Ms. Hawkins informed Dr. Doan she was suffering "worsening insomnia,

2  extreme anxiety, severe depression, difficulty concentrating[,] and nervousness");

3  Johnson Decl. (Dkt. # 20) ¶ 3, Ex. E ("Hawkins Dep.) at 37:17-22, 54:11.)  Ms. Hawkins

4  was also treated for gastrointestinal issues at this time.  (*See* Longosky Decl., Ex. D at

5  6-7, 9.)  Ms. Hawkins allegedly requested that Dr. Doan prescribe lorazepam, but Dr.

6  Doan allegedly declined that request due to that medication's habit-forming

7  characteristics.  (Compl. ¶ 4.7.)  Dr. Doan instead prescribed Zoloft for Ms. Hawkins's

8  anxiety and depression.  (*Id.* ¶ 4.8.)  Ms. Hawkins further alleges that Dr. Doan

9  recommended she avoid drugs and alcohol and "follow up with her outside Bellevue

10  Counselor."  (*Id.* ¶ 4.9.)  Despite Dr. Doan's recommendations, Ms. Hawkins asserts that

11  her anxiety and insomnia worsened.  (*Id.*)

12      Ms. Hawkins followed up with Dr. Doan on November 16, 2011, and complained

13  that the medication Dr. Doan had prescribed was not working.  (*Id.* ¶ 4.10.)  Dr. Doan

14  allegedly told Ms. Hawkins that she had not given Zoloft enough time to effectively

15  work.  (*Id.*)  Later that month, on November 30, 2011, Dr. Carl Jensen evaluated Ms.

16  Hawkins to determine whether she could return to work.  (*Id.* ¶ 4.11.)  According to Ms.

17  Hawkins, Dr. Jensen diagnosed her with post-traumatic stress disorder ("PTSD") during

18  that evaluation and did not prescribe any additional medication for Ms. Hawkins's

19  anxiety and insomnia.  (*Id.* ¶ 4.12.)

20      Ms. Hawkins alleges that she further deteriorated in December 2011 after

21  prolonged sleeplessness over two to three days.  (*Id.* ¶ 4.13.)  Due to the lack of sleep,

22  Ms. Hawkins alleges that on December 15, 2011, she became psychotic again.  (*Id.*)

1  During this episode, she attacked her mother and was arrested.  (*Id.*; Longosky Decl. at 1,
2  Ex. C at 7.)

3          On October 24, 2013, Ms. Hawkins presented a claim under the Federal Tort
4  Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, to the VA for the doctors' alleged
5  malpractice in treating Ms. Hawkins after the workplace psychotic episode.  (*See* Claim
6  at 2, 4-5.)  The VA denied Ms. Hawkins's claim on April 18, 2014, concluding that
7  "there was no negligent or wrongful act on the part of an employee of the [VA] acting
8  within the scope of his or her employment."  (Denial (Dkt. # 1-2) at 2).)  On October 1,
9  2014, Ms. Hawkins requested that the VA reconsider its denial.  (Recons. (Dkt. # 1-3) at
10  2-4.)

11          Based on these events, Ms. Hawkins filed this lawsuit on April 6, 2016.  (*See* Dkt.)
12  She brings an FTCA claim on theories of negligence, medical malpractice, corporate
13  negligence, and violation of Washington's Vulnerable Adult Protection Act, RCW
14  74.34.[3]  (Compl. ¶¶ 5.1-5.32.)  Ms. Hawkins seeks damages of $1,500,000.00 for "serious
15  personal injuries, pain and suffering[,] and mental anguish."  (*Id.* ¶¶ 6.1-6.2.)  Ms.
16  Hawkins also seeks special damages, including out-of-pocket costs, medical costs, lost
17  income, loss of household services, and other special damages in an amount to be proven

18
19          [3] The court construes Ms. Hawkins's complaint as pleading one claim under the FTCA
on multiple theories of liability.  (*See* Compl. ¶¶ 5.1-5.32.)  Although it is possible that Ms.
Hawkins instead intends to plead independent state law claims for violation of Washington's
Vulnerable Adult Protection Act or of corporation negligence under RCW 7.70, for example,
20  Ms. Hawkins does not invoke the court's supplemental jurisdiction over such a claim.  (*See id.*
¶¶ 2.1-2.4, 5.21-5.32.)  For this reason, the court instead views Ms. Hawkins's assertion of those
21  statutes as pleading theories of negligence.  *See* RCW 5.40.050 ("A breach of a duty imposed by
statute, ordinance, or administrative rule shall not be considered negligence per se, but may be
22  considered by the trier of fact as evidence of negligence . . . .").

ORDER - 4

1   at trial.  (*Id.* ¶ 6.3.)  Ms. Hawkins contends that the Government is liable for negligence

2   in Ms. Hawkins's treatment and the supervision of her treatment because the treatments

3   Drs. Doan and Jensen prescribed did not work, the doctors did not suggest any treatment

4   for insomnia, and the doctors' care fell below that of a reasonably prudent physician.

5   (*See id.* ¶¶ 4.15-4.22.)

6         On May 25, 2017, the Government moved for summary judgment on Ms.

7   Hawkins's FTCA claim or to dismiss her claim for lack of subject matter jurisdiction.[4]

8   (*See* Mot.)  The court now addresses the Government's motion, which Ms. Hawkins

9   opposes.  (*See* Resp.)

10                **III.    ANALYSIS**

11         The Government moves for summary judgment under Federal Rule of Civil

12   Procedure 56 on the basis that the FTCA's statute of limitations bars Ms. Hawkins's

13   claim.  (Mot. at 1.)  The Government also argues that the court lacks subject matter

14   jurisdiction over Ms. Hawkins's FTCA claim because her claim falls within the Federal

15   Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, which compensates

16   federal employees for injuries they sustain on the job.  (*Id.* at 1-2.)  Because the

17   Government raises the court's subject matter jurisdiction, the court first analyzes that

18

19

20       [4] Neither the Government nor Ms. Hawkins authenticated the exhibits they filed in
support of their briefing.  (*See* 7/21/2017 Order (Dkt. # 19) at 2 (noting the lack of authentication

21   and ordering the parties to authenticate their exhibits).)  After the court ordered them to do so
(*see id.*), both parties filed proper authentication to which neither party objects (*see* Johnson

22   Decl.; Longosky Decl.; Sykes Decl. (Dkt. # 22); Dkt. (showing no objection to the parties'
authentication)).

1  issue.[5]  *See Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir. 2008) ("[F]ederal courts

2  normally must resolve questions of subject matter jurisdiction before reaching other

3  threshold issues.").

4  **A.      Motion to Dismiss for Lack of Subject Matter Jurisdiction**

5            1.  Legal Standard

6            A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests the

7  court's subject matter jurisdiction.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

8  1039 (9th Cir. 2004); *see also Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir.

9  2009) ("An objection that a federal court lacks subject matter jurisdiction may be raised

10  at any time.").  "When a motion to dismiss attacks subject-matter jurisdiction under Rule

11  12(b)(1) on the face of the complaint, the court assumes the factual allegations in the

12  complaint are true and draws all reasonable inferences in the plaintiff's favor."  *City of*

13  *L.A. v. JPMorgan Chase & Co.*, 22 F. Supp. 3d 1047, 1052 (C.D. Cal. 2014).  A

14  defendant may also mount a factual challenge, which the court resolves by considering

15  the extrinsic evidence the defendant puts forth.  *See Wolfe v. Strankman*, 392 F.3d 358,

16  362 (9th Cir. 2004).  When a party raises the question of subject matter jurisdiction by

17  factual motion, the plaintiff bears the burden of establishing the court's jurisdiction by

18  "furnish[ing] affidavits or other evidence."  *Meyer*, 373 F.3d at 1039.

19  //

20

21        _____

          [5] The FTCA's statute of limitations is nonjurisdictional.  *See United States v. Kwai Fun*
22  *Wong*, --- U.S. ---, 135 S. Ct. 1625, 1638 (2015) ("[W]e hold that the FTCA's time bars are
    nonjurisdictional and subject to equitable tolling.").

2.  <u>The Government's Motion</u>

In a factual challenge to the court's subject matter jurisdiction, the Government

argues that the court is without subject matter jurisdiction over Ms. Hawkins's FTCA

claim because FECA provides the exclusive remedy for her workplace-related injuries.

(Mot. at 6-12; *see also id.* (citing exhibits in support of the Government's argument that

the court lacks subject matter jurisdiction).)  Ms. Hawkins disputes that FECA applies to

her claim because her injury "was not borne while [she] was on the job."  (Resp. at 8.)

Subject to certain exceptions not relevant here, FECA provides

"compensation . . . for the disability or death of an employee resulting from personal

injury sustained while in the performance of his [or her] duty."  5 U.S.C. § 8102(a).

FECA provides the exclusive remedy for a federal employee's injury on the job,

precluding recovery under the FTCA.  *Id.* § 8116(c); *see also Moe v. United States*, 326

F.3d 1065, 1068 (9th Cir. 2003) ("FECA's exclusivity provision bars recovery under the

FTCA . . . .").  "In other words, if compensation is available under FECA, all other

statutory remedies for claims arising under the same facts are preempted."  *Moe*, 326

F.3d at 1068.  Compensation is available under FECA when a plaintiff's alleged injury

falls within FECA's scope and she is entitled to compensation under the facts of her case.

*See id.*  Whether the injury falls within FECA's scope "is a question that must be

answered by the federal courts, because it is one of jurisdiction."  *Id.*  "If a plaintiff has a

colorable claim under FECA, the federal courts should dismiss any action arising under

the same facts for lack of subject matter jurisdiction."  *Id.*; *Figueroa v. United States*, 7

F.3d 1405, 1407-08 (9th Cir. 1993); *Jorgensen v. United States*, No. C 03-00188 MJJ,

2004 WL 3267262, at *3 (N.D. Cal. Feb. 17, 2004) ("[I]f a substantial question of FECA coverage exists because the injury was sustained in the performance of duty, an injured employee may not commence a[n] FTCA action before exhausting FECA's administrative remedies."); *Hefner v. Chao*, No. 08cv1586 L(BLM), 2009 WL 2485754, at *3 (S.D. Cal. Aug. 11, 2009) ("If a federal employee's injury w[as] incurred while he was acting under the scope of his employment at the time he sustained injuries, FECA precludes a[n] FTCA claim whether or not FECA provides compensation for a particular injury.").  An FTCA claim remains in federal court only when the court concludes as a matter of law that the Secretary of Labor could not find FECA coverage.  *See Jorgensen*, 2004 WL 3267262, at *3 (quoting *Concordia v. United States Postal Serv.*, 582 F.2d 439, 442 (5th Cir. 1978)).

For a workplace injury to fall within FECA's scope, the plaintiff must have suffered a physical injury, although psychological injury that later causes physical injury also falls within FECA's scope.  *See Moe*, 326 F.3d at 1068-69; *Sheehan v. United States*, 896 F.2d 1168, 1174 (9th Cir. 1990) (stating that "FECA compensates government employees only for physical harm"); *Dettrich v. Shinseki*, No. CIV. 1:10-434 WBS, 2011 WL 3204729, at *5 (D. Idaho July 26, 2011) ("Where . . . a plaintiff brings a claim for psychological harm resulting in physical injury, the claim falls within FECA's scope.").  For example, the Ninth Circuit held that PTSD suffered from a workplace shooting, which "aggravated" the plaintiff's colitis, is "the 'type' of injury FECA covers" and gives rise to a colorable FECA claim.  *Moe*, 326 F.3d at 1069.  Courts have also found that emotional distress manifesting in physical symptoms falls within FECA's ambit.  *See*

1    *Newsome v. United States*, No. CV-F-04-5335 LJO, 2006 WL 1153609, at *4 (E.D. Cal.

2    Apr. 28, 2006) (finding that emotional distress manifesting in hypertension, headaches,

3    and stomach pains fell within FECA's scope); *Dettrich*, 2011 WL 3204729, at *6

4    (finding a colorable claim under FECA where the plaintiff alleged her emotional distress

5    resulted in extreme stress, anxiety, depression, loss of sleep, headaches, paranoia,

6    difficulty concentrating, and a reduction in cognitive abilities); *Hanft v. United States*,

7    No. CV-04-258-E-LMB, 2005 WL 1863321, at *2 (D. Idaho Aug. 4, 2005) (finding a

8    colorable claim under FECA where the plaintiff "incur[red] physical harm as a result of

9    his emotional stress"); *Raheem v. Miller*, No. CIV-09-80-C, 2010 WL 2595112, at *15

10    (W.D. Okla. May 14, 2010) ("[C]ontinued sleeplessness could reach a sufficient intensity

11    to create a 'physical injury.'"); *cf. Carlisle v. Consol. Rail Corp.*, No. 88-8752, 1990 WL

12    109896, at *3 (E.D. Pa. July 31, 1990) (concluding under the Federal Employee's

13    Liability Act ("FELA") that "allegations of insomnia and sleepwalking are . . . 'objective

14    physical manifestations' which satisfy the physical injury requirement for stating an

15    emotional distress claim under the FELA").  Based on this authority, the court concludes

16    that Ms. Hawkins has a colorable FECA claim.

17        Ms. Hawkins alleges that she suffered workplace harassment over three years that

18    led to a psychotic episode at work, for which she was briefly hospitalized.[6]  (Compl.

19    ¶¶ 4.4-4.5.)  As a result of this event, Ms. Hawkins alleges that she suffered insomnia,

20

21        [6] Ms. Hawkins is an employee within the meaning of FECA.  *See* 5 U.S.C. § 8101(1)(A) (defining an employee for purposes of FECA as a civil employee of any branch of the United States government); (Longosky Decl. at 1, Ex. B at 2 (documenting Ms. Hawkins's employment

22    by the VA Health Care System).)

1    depression, anxiety, and a lack of concentration, which her medical providers allegedly

2    negligently treated.[7]  (*Id.* ¶¶ 4.9, 4.12-4.13; Claim at 4.)  The injuries Ms. Hawkins

3    suffered—emotional distress coupled with her extreme sleeplessness—suggest a

4    colorable FECA claim such that there is a substantial question whether Ms. Hawkins is

5    entitled to compensation under that act.[8]  *See Newsome*, 2006 WL 1153609, at *4;

6    *Dettrich*, 2011 WL 3204729, at *6.  In addition, although she has the burden of proving

7    the court's subject matter jurisdiction over her claim, *see Meyer*, 373 F.3d at 1039, Ms.

8    Hawkins fails to argue that she did not suffer physical injury from the workplace

9    harassment, mental breakdown at work, and the allegedly negligent treatment afterward

10   (Resp. at 7-8 (arguing only that FECA does not apply to her medical malpractice claim)).

11   For these reasons, the court concludes that because Ms. Hawkins's FTCA claim colorably

12   falls within FECA's scope, the court does not have subject matter jurisdiction over Ms.

13   Hawkins's FTCA claim.

14        Ms. Hawkins nonetheless argues that FECA does not cover her injuries because

15   (1) the workplace incident exacerbated symptoms she experienced "some 15 years

16

17        [7] Ms. Hawkins also received treatment for gastrointestinal issues, which may have been exacerbated by the workplace injury.  (Longosky Decl., Ex. D at 6-7, 9.)

18        [8] Although one district court case suggests that injury caused by a deliberate act does not fall under FECA, *see Carroll v. Holder*, No. 09-3093-CL, 2011 WL 7091804, at *24 (D. Or.

19   Sept. 30, 2011) (stating that the alleged injury did not fall within FECA's scope because the plaintiff alleged "harm as the result of a deliberate act, not an accidental one"), other courts and the Department of Labor have found that workplace harassment can give rise to an injury

20   compensable under FECA, *Swafford v. United States*, 998 F.2d 837, 838 (10th Cir. 1993) (stating that a federal employee received FECA benefits after experiencing workplace sexual harassment

21   that aggravated an injury); *H.S. and United States Postal Serv.*, No. 16-0998, 2017 WL 2983672, at *7 (E.C.A.B. May 11, 2017) (stating that workplace harassment can give rise to a

22   compensable injury under FECA).

1    earlier," and (2) her treating physicians subsequently caused the injuries upon which her

2    claim is based.  (*See* Resp. at 7-9.)  Neither of Ms. Hawkins's arguments has merit.  Even

3    where a plaintiff has an existing injury, FECA covers claims for injuries made worse by

4    an on-the-job event.  *See, e.g.*, *Rendon v. Potter*, No. SA-06-CV-875-XR, 2007 WL

5    1452932, at *11 (W.D. Tex. May 15, 2007) (finding that FECA applied where the

6    plaintiff alleged "that his shoulder injuries were caused or exacerbated 'while in the

7    performance of his duty' as a postal service employee"); *cf. Vander v. United States*

8    *Dep't of Justice*, 268 F.3d 661, 662-63 (9th Cir. 2001) (concluding that a statute

9    substantially similar to FECA applied to an inmate injured while working on a prison

10   work detail, even though the injury aggravated a preexisting injury).  By similar logic,

11   FECA bars FTCA claims for medical malpractice arising from the subsequent treatment

12   of a workplace injury.  *Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995)

13   (concluding that FECA "preempt[s] FTCA suits based on medical malpractice arising out

14   of federal employees' injuries at work"); *see also id.* ("Although [the plaintiff] isn't suing

15   for the injury he suffered at work, but for medical malpractice arising out of the injury,

16   this is a distinction without a difference."); *Williamson v. United States*, --- F.3d ----,

17   2017 WL 2924965, at *1 (6th Cir. July 10, 2017) (stating that FECA preemption "applies

18   broadly even when a work-related injury has been negligently treated by an entirely

19   non-work-related federal hospital"); *Shuford v. United States*, No. 13-CV-6303 (SJF)

20   (AKT), 2014 WL 4199408, at *7 (E.D.N.Y. Aug. 21, 2014) ("Where a federal

21   employee's injury is sustained while in the performance of his duty, subsequent

22   aggravation of the injury caused by medical malpractice is compensable under FECA."

1    (internal quotation marks, alteration, and citations omitted)).  Based on this case law, Ms.

2    Hawkins's injuries—even if they stem from earlier injuries or result from the alleged

3    medical malpractice—give rise to a colorable FECA claim, divesting the court of

4    jurisdiction over her FTCA claim.

5            3.  <u>Dismissal or Stay</u>

6            Because the court concludes there is a colorable FECA claim, Ms. Hawkins asks

7    the court to stay her FTCA claim—rather than dismiss it—so that she may "pursue her

8    administrative remedy to file her FECA claim with the Department of Labor . . . 'in order

9    to allow the Secretary to resolve the question of whether or not the claims are covered by

10   FECA.'"  (Resp. at 9 (quoting *Figueroa*, 7 F.3d at 1408); *see also* Mot. at 15 (requesting

11   that the court "either dismiss this FTCA action without prejudice, or stay the action while

12   [Ms. Hawkins] pursues her administrative remedies" under FECA).).  Although courts

13   usually dismiss cases over which they lack subject matter jurisdiction, they instead

14   typically "stay the FTCA action pending a determination by the Secretary of Labor"

15   when "there is a substantial question regarding FECA coverage."  *Avery v. United States*,

16   No. C06-5655RBL, 2007 WL 3228437, at *5 (W.D. Wash. Oct. 31, 2007); *see also*

17   *Dettrich*, 2011 WL 3204729, at *5 ("If a plaintiff has already filed suit in district court

18   and a substantial question as to FECA coverage exists, the district court will generally

19   stay the action pending a determination by the Secretary of Labor." (citing *Reep v. United*

20   *States*, 557 F.2d 204, 208 (9th Cir. 1977)); *Din v. United States*, No. C 13-01935 JSW,

21   2014 WL 12696533, at *4 (N.D. Cal. Mar. 10, 2014).  A stay prevents "the statutorily

22   mandated time limitations likely [to] bar [a plaintiff] from re-filing her [FTCA] claim in

1    district court if she were to be denied at the administrative level." *Avery*, 2007 WL

2    3228437, at *5.

3        Because the Government contends that the FTCA's statute of limitations barred

4    Ms. Hawkins's claim at the time she filed this lawsuit (Mot. at 4-5 (seeking summary

5    judgment on the basis that the FTCA claim is barred)), the court addresses that argument

6    to determine whether a stay—rather than dismissal—is appropriate.  The FTCA requires

7    a claimant to file an administrative claim with the appropriate government agency within

8    two years of the accrual of a claim.  28 U.S.C. § 2401(b) ("A tort claim against the

9    United States shall be forever barred unless it is presented in writing to the appropriate

10    Federal agency within two years after such claim accrues or unless action is begun within

11    six months after the date of mailing . . . of notice of final denial of the claim by the

12    agency to which it was presented.").  The claimant may then file an FTCA action in

13    district court within six months of the agency's final determination of the claim.  *Id.*  A

14    claimant's reconsideration of the agency's final determination, however, tolls that

15    six-month time limitation for an additional six months.  28 C.F.R. § 14.9(b); *see also*

16    *Veysada v. United States*, No. 11 C 4283, 2012 WL 2513772, at *2-3 (N.D. Ill. June 28,

17    2012) (applying 28 C.F.R. § 14.9(b) in an FTCA action).

18        Here, Ms. Hawkins filed her FTCA claim with the VA on October 24, 2013,

19    within the initial two-year period for filing the claim.  *See* 28 U.S.C. § 2401(b); (Claim at

20    2.)  On April 18, 2014, the VA denied Ms. Hawkins's claim, which constituted a final

21    determination of Ms. Hawkins's claim.  (Denial at 2.)  Ms. Hawkins sought

22    reconsideration on October 1, 2014, triggering the six-month tolling period.  (*See*

1    Recons.); 28 C.F.R. § 14.9(b).  Ms. Hawkins therefore had until April 19, 2015—six

2    months from her reconsideration date plus the remainder of the original six-month

3    period—to file her FTCA claim in this court.  28 U.S.C. § 2401(b); 28 C.F.R. § 14.9(b).

4    However, Ms. Hawkins did not file this lawsuit until nearly a year later on April 6, 2016.

5    (*See* Dkt.)  Accordingly, Ms. Hawkins's FTCA is time-barred.

6          Rather than contest that she untimely filed this lawsuit, Ms. Hawkins argues that

7    she is entitled to equitable tolling.  (*See* Resp. at 4-5.)  Because the FTCA's two-year

8    statute of limitations is not jurisdictional, the limitations period is subject to equitable

9    tolling.[9]  *See Wong*, 135 S. Ct. at 1638.  Equitable tolling is an extraordinary remedy that

10   is available only when the plaintiff establishes two elements:  "(1) that he has been

11   pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his

12   way" of timely filing a claim.  *Credit Suisse Sec. (USAS) LLC v. Simmonds*, 566 U.S.

13   221, 227 (2012); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (Equitable tolling

14   is "unavailable in most cases.").  Ms. Hawkins argues that she diligently pursued her

15   rights by timely filing a claim with the VA and timely requesting reconsideration of the

16   VA's final decision.  (Resp. at 5.)  Ms. Hawkins also contends that extraordinary

17   circumstances kept her from filing this lawsuit within the time allowed under the FTCA.

18   (*Id.* at 6-7.)  Without providing any evidence, Ms. Hawkins contends that her counsel

19   spoke with VA counsel who told her that the VA was reviewing the reconsideration

20

21         [9] Accordingly, the failure to comply with the statute of limitations is an affirmative
     defense that a defendant has the burden of pleading and proving.  *See Saofaigaalii v. United*
22   *States*, No. 14-00455 SOM/KSC, 2016 WL 3527095, at *6 (D. Haw. June 23, 2016) (citing
     *Schmidt v. United States*, 933 F.2d 639, 640 (8th Cir. 1991)).

1    request.  (*Id.* at 6.)  Ms. Hawkins also states that her mother's death in June 2015

2    prevented her from timely filing this suit.  (*Id.* at 7.)  The Government argues that Ms.

3    Hawkins did not diligently pursue her claim and that these circumstances are not

4    extraordinary.  (Reply (Dkt. # 18) at 3-5.)

5        The court concludes that Ms. Hawkins fails to demonstrate she is entitled to

6    equitable tolling.  First, the record before the court does not show that Ms. Hawkins

7    diligently pursued her claim after she sought reconsideration.  Even if the court credits

8    the unsupported statements in Ms. Hawkins's briefing that the VA represented it was

9    reviewing Ms. Hawkins's reconsideration request, that fact does not absolve Ms.

10   Hawkins of her responsibility to file a timely claim.  *See Lehman v. United States*, 154

11   F.3d 1010, 1016 (9th Cir. 1998) (holding in an FTCA action that "the absence of legal

12   advice from the government's counsel [regarding the statute of limitations] does not

13   make plaintiffs' ignorance of the limitations period excusable" and concluding that

14   equitable tolling did not apply).  Simply put, the VA's representation does not constitute

15   an extraordinary circumstance.

16       Further, Ms. Hawkins's argument that her mother's death after the limitations

17   period expired could somehow be an extraordinary circumstance preventing her from

18   timely filing a claim is similarly unavailing.  *Cf. Perez v. McEwen*,

19   No. CV 12-4069-DDP (JEM), 2013 WL 796101, at *6 (C.D. Cal. Jan. 28, 2013)

20   (declining to apply equitable tolling where there was no "causal link" between the event

21   the petitioner claimed constituted an extraordinary circumstance and the failure to timely

22   file a habeas petition).  Accordingly, the court concludes that a stay in this case is

1   inappropriate because Ms. Hawkins's FTCA claim is time-barred and she has not met her

2   burden to invoke equitable tolling.  The court therefore dismisses Ms. Hawkins's case

3   against the Government without prejudice, and Ms. Hawkins must seek any further relief

4   in administrative proceedings for recovery under FECA.[10]

5                        **IV.    CONCLUSION**

6           For the foregoing reasons, the court GRANTS the Government's motion (Dkt.

7   # 16) and DISMISSES this case without prejudice as to the United States of America and

8   with prejudice as to Department of Veterans Affairs, VA Puget Sound Health Care

9   System, John Does 1-10, and Jane Does 1-10.

10          Dated this 31st day of July, 2017.

11

12          _____

13          JAMES L. ROBART
            United States District Judge

14

15

16

17

18          _____
            [10] The court's dismissal as to the Government is without prejudice because although the

19   Government moves for summary judgment on Ms. Hawkins's FTCA claim (Mot. at 4-5), the
     court may not issue rulings on substantive matters of law when it does not have subject matter
     jurisdiction.  *Cf. Sinochem Int'l Co. Ltd v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31

20   (2007) (stating that a federal generally may not rule on the merits of a case without first
     determining the court's subject matter jurisdiction); *Mirzoyan v. Wells Fargo Bank, N.A.*,

21   No. C11-0023RSM, 2012 WL 1259079, at *1 (W.D. Wash. Apr. 13, 2012) (stating that the court
     could not rule on the plaintiffs' motion in the absence of subject matter jurisdiction); *see supra*
     § III.A.2.  The court therefore makes no ruling on the Government's motion for summary

22   judgment.